DACA Tansy Stuck v. Andrew Saul has been submitted all the briefs. So the next case for oral argument this morning is Alex Canara v. Karla Nemeth, California Department of Water Resources Director. Good morning, your justice. May I begin, your honor? You may. Thank you. Justice McGuia, Justice Hunsaker, and Justice Nelson, thank you for hearing our case in oral argument. And thank you for promoting us as justices, but we're still just judges. All right. All right. Well, if we're just thinking down the road, I'd ask your indulgence just for a moment to give you the very- Can you state your appearance, please? Yes, my name is Michael Aguirre, and I represent the appellant. On January 19th, 2019, U.S. District Court Judge Alsop, after noting that Pacific Gas and Electric had engaged in a series of safety violations that had started over 20 fires in 2017 and 2018, that killed over a hundred people, ordered PG&E to reinspect and to fix its electric grid. Now, the reason Judge Alsop did that is because Pacific Gas and Electric is a convicted felon. They killed eight people in the fire that occurred that they caused in San Bruno. It was in this context of Judge Alsop's order that PG&E then turned to the Supreme Court to frame an agreement with them for a statute to make customers pay for much of the damages that PG&E had caused. With having made over $5.3 million in political contributions, PG&E had achieved the kind of disproportionate influence and power in the political process that Justice O'Connor warned of in the Kelo case, in her dissent. The law, I won't call it a law, I'll call it an act, AB 1054, was made in a series of private meetings detailed in our complaint between PG&E executives and the governor's staff and state officials. It was released after those meetings on July 5th. It was passed on July and signed into office, signed into law July 12th, and our lawsuit was filed July 19th. Now, I know that Your Honor has heard a great deal about the Johnson Act, but I would like to repeat that. Our lawsuit was filed before this matter even came to the CPUC. And the reason for that is under the case of public utility- Why does that matter? Why does that matter for purposes of the Johnson Act? The Johnson Act seems to preclude any lawsuit that would enjoin an order that would affect the rates. So why does that matter whether the lawsuit was brought before or after, if it would affect rates? Thank you for asking that critical question. It is because it underscores the fact that what is attacked here is the CPUC. I actually think that you have a decent argument there as a plain statutory interpretation, but how do you square that with our prior cases? Because our prior cases going back to 1991, 1998, I mean, we've been very consistent. And then just last year, have all been very consistent that you can't do indirectly what you can't do directly. And again, Your Honor, the Public Utility Commission of California versus United States, 355 U.S. 534. The U.S. Supreme Court ruled that the Johnson Act does not deprive jurisdictions of district court of its jurisdiction where the constitutional challenge is not to a rate order, but to a statute. We're not challenging the rate order. The case was filed before any rate order was ever issued. Are you referring to the Public Utilities Commission of California, that case? Is that the case you're referring to? Exactly, Your Honor. But isn't that distinguishable, that case? Because that was decided based on the supremacy clause, or I think could be considered a preemption case. I'm not quite sure that lends the support that I think you tend to give it because it seems to have been a passing statement about the Johnson Act in that case. Your Honor is right about that. But the reality is the holding in that case was that the Johnson Act, the PUC argued that the action was precluded by the Johnson Act. And the actual holding in that case said that the Johnson Act didn't apply because the attack was on the statute and not on the order. And this is what's so unique about this in our case. The purpose of the Johnson Act is to channel the normal rate case litigation to state court while leaving federal courts free to exercise their equity to review whether there has been a reasonable notice in hearing. But before you even get to that, before you even get to that, the issue is whether the district court had jurisdiction to hear our challenge to an act of the Constitution. And what happened here is you have a collapsing, you have the legislature and the PUC and the legislature dictating exactly how the so-called CPC actions to proceed. For example, they had to act within the CPC had to start a proceeding within 14 days. They had to have a decision within 90 days. Now, the issues involved here are super complicated. For example, the whole theory of AB 1094 is that the making the utility customers pay is going to make the utilities more attractive to investors. And then those investors are going to give the utilities more money. And then the utilities are going to invest in safety. None of that was reviewed. None of that was reviewed anywhere. It was just, and the whole point here is where, what is your best authority other than that case, the Supreme Court case? What's your best authority, especially in the Ninth Circuit? Is there, what's your best authority? Well, Your Honor, I appreciate that question, but I'm going to stick with the U.S. Supreme Court on that one. That's my best authority. Well, but again, just humor me if I think that's more supremacy costs. I just want your next best authority. Well, I'm going to go with Matthews v. Eldridge, Your Honor, and the reasons that I say that is that in this case, there absolutely was no due process. I mean, can you imagine requiring utility customers to pay $13.5 billion over a 17 year period and have an order saying that there's no way you can change it until 2036 and never giving the people that are having to pay, they had no discovery, they had no reverend entry hearing, they had no cross-examination, there was not- Well, hold on. This is only, the Johnson Act only affects where you can pursue your claims. It doesn't preclude you from going into state court. It just precludes you from coming into federal court. So I don't think this argument that you're going to be out to lunch and not be able to be heard, I mean, maybe you have a valid claim. I don't know. The question is whether the federal court should be hearing it or not. And my fundamental question is, do you agree that if the district court were to give you the relief that you're requesting and enjoin the statute, would that have an effect on rates? No. You agree that it would. No, I don't, because it's not a rate. A rate is something that you do after you come in, you examine what the expenditures are going to be, you give everybody an opportunity to participate in the process. You analyze how much money, what's the connection between the $10.5 billion in this case and whatever outcome there is going to be as far as increasing- Mr. DeGarra, I'm sorry, but your complaint, the main parts in your complaint that you're challenging, the main parts of AB 1054 are the sections related to the creation of the wildfire fund and the imposition of a surcharge on rate payers. So that seems to be a challenge to the rate and the sort of indirect challenge to a rate order that our precedent in U.S. West prevents. May I say- But I want to hear what your response is. Your Honor, the AB 1054 is what imposed the $10.5 billion. That's where that came from. That came right out of the law. The, it is not a rate because the utility, the CPUC was not even given the time that they would need to put together a rate. Let me ask this in a different, I think that's Judge Nelson's question in a different way. Do you agree that if you obtain relief that you're seeking, CPUC will be unable to enforce the order approving the surcharge? No, no. I think what they're not going to be able to do is set up a welfare fund. They're not going to be able to issue bonds, but if they want to just collect a rate and your Honor, you know, allows that to stand, even though the CPUC did not proceed in a normal way that they would normally proceed, that's fine. But they can't set up a welfare fund and that is done by the statute. And the whole point here, your Honor, is that the rates have to be done in a way that doesn't just act as a conduit for transferring private money from the innocent to a convicted felon. But that last sentence seems to just undermine everything you just said, because you're saying the rate can't be, the surcharge can't be set in such a way. I don't understand how you can claim that they would, if the law were enjoined, the statute were enjoined, how this California Public Utilities Commission could implement a surcharge, but then with no authority to use that money for anything. Your Honor, the fact that they, the fact is, is that what we're trying to knock out is that portion of this scheme that was done by the legislature. Whatever, if there's some sort of, uh, I understand that. And again, in a vacuum, you have a pretty good technical argument, but we just said last year that although the text of the Johnson Act mentions only injunctive relief, we have broadly construed the statute as precluding federal court jurisdiction over all suits affecting state approved utility rates, including actions seeking declaratory relief and compensatory damages. I completely agree with that, Your Honor. I completely agree with that. But, but as I said before, the Supreme Court has explained that almost in every setting where important decisions turn on questions of fact, due process requires the opportunity to confront and cross-examine adverse witnesses. That didn't happen here. Okay. Maybe it did and maybe it didn't, but that's really not the issue before us. Well, the question is, can you pursue that claim in federal court? Why can't you just go to state court and you act as if we're keeping you from getting relief? Your Honor, there is no option in state court. Okay. The state, we're in a one party state. Okay. You've got the governor and everybody else down the line. Okay. So you're just saying that you're, you're not going to get fair due process, but nothing's polluting you from filing a complaint in state court. Well, except that, except that it's an app, it would be an exercise of, uh, you know, of absurdity for me, but, but Your Honor, but, but let me just go back to even under the Johnson Act, there has to be notice and reasonable hearing. Okay. Even under the Johnson Act. Yeah, you're right. Okay. And, and, and what, and what, uh, you know, what was said, uh, and I think this is a really important decision and it, and it comes from kind of a... Didn't they respond, I mean, to that point for purposes of, uh, of whether that, that, that, uh, requirement of the Johnson Act was complied with or not. I mean, wasn't there a notice of the hearing and, and weren't, weren't interested parties allowed, uh, persons allowed to become parties? And wasn't there an avenue for these, those unfamiliar with the CPUC to get help and weren't the parties allowed to prevent and present their views at multiple stages and they were given the right for oral argument, the commentators issued a proposed decision, the comments were received at the proposed decision, and then they addressed the comments in the final decision. This does not sound like someone who was not listened to. Now, I understand you may think that there was a preconceived outcome here, but you know, it doesn't seem like for purposes of the Johnson Act requirement that there wasn't proper notice. Your Honor, it was a sham. It was a sham. How, how can you, I'm sorry, please forgive me, Your Honor. Yeah, I know. I understand that you don't think that was enough, but I, I, we're required to look at our, our, our law, our case law. And it seems like, um, the, the, the one hearing and the 30 days notice was sufficient, uh, to satisfy the requirement in Brooks. And so I'm, I'm not quite sure. Again, in a vacuum, you might have, but we're, we're, we're bound by our case law and, um, trying to figure out why, why we would, how we could look away from what Brooks says. Your Honor, there's nothing about Brooks as a fine, fine decision. Okay. There's nothing wrong with Brooks, but what we're dealing with here is we're talking about the decisions that were made around that table during those 18 meetings in secret. They issued a, a, a statute. They issued a statute and seven days later, they passed it. And as part of the statute, they said, you don't have enough time to hold what would be a reasonable hearing. You have to have your decision in 90 days. How could you possibly, you couldn't do a discovery. Just think about it. How could you do a discovery, uh, and, and, and, and, uh, do cross-examination at a hearing? How could you do any of that in 90 days? It's impossible. And that's the point. It's not, it wasn't reasonable. It's 17 years, 17 years, $13.5 billion. Cannot change the decision until 2036. All right. Thank you, Mr. McGarry. You're, you're out of time. I'll see if I can give you a couple of minutes for rebuttal. Okay. Let's just, did you have any other questions at this time? Judge Nelson? Okay. Then we'll proceed. Uh, good morning, your honors. Um, my name is Chris Nolan on behalf of the, uh, commissioners of the California Public Utilities Commission. Um, I'll be addressing the Johnson Act. Um, and, uh, if I'm happy to go over if, uh, if you have more questions. And I actually do have a question because I mean, I understand our precedent and, and it seems to be fairly consistent with the precedent of other circuits that it, you can't do indirectly what you couldn't do directly, but where does, there's gotta be some line to that because it seems like almost any action would, you know, in this arena would, would arguably have some effect on rates. And if we just allow, um, the Johnson Act to be invoked every time that, uh, a lawsuit might potentially affect rates, it seems that it's very easy to go on a slippery slope that gets away from what the Johnson Act was intended. Well, your honor, I think U.S. West's, uh, set up the inquiry the best when it described a threshold inquiry. And it's quote says, the threshold inquiry is whether the complaint challenges any commission order affecting rates. If it does not- But this doesn't, this doesn't challenge an order, right? I'm sorry. I apologize. Uh, Well, well, the challenge here doesn't, the, the, the plaintiffs are not challenging an order that affects rates, right? No, they are, they are attempting to enjoin the CPUC's order and implementing the wildfire fund. They, um, in their complaint, as the district court noted- And that order imposes the surcharge as well? Yes. They, that, the decision that were, that's at issue in this case, imposes the wildfire fund. They are seeking to enjoin that. Uh, they filed a first amendment complaint after the decision had been issued. That's the operative complaint. And they directly sought and are seeking to enjoin that, that rate. So getting to the threshold inquiry, um, it, it, it's not a Johnson Act case. If, uh, if a utility, if a party can state a federal claim and be entitled to relief without encroaching on a commission's orders and rate setting authority, that's under U.S. West. Does it, does it matter here that the plaintiffs are, you know, they're challenging this AB 1054, which does relate in some ways to the CPUC rate setting, um, proceeding, but also has a lot of provisions, provisions that are unrelated, um, to the rates that utilities can charge, does that, does that affect whether or not this is a Johnson Act case, uh, which seems to be, you know, concerned Johnson Act with keeping rate disputes out of, out of federal court? You're right, Your Honor. And the same U.S. precedent, um, holds that, uh, rate making is an integrated process and you're not allowed to attack by piecemeal or, um, by flank one part of the rate making and then undo that part where, uh, it's an integrated whole. It's, it's a, you can't attack components of rate making under the Johnson Act as a sort of a side attack. And U.S. West says that very clearly. I mean, all cases essentially say the same thing. It's not just U.S. West. In your view, what's the minimum requirement for a reasonable notice and hearing under the Johnson Act? Is it simply compliance with state law? What's, what's your, what's your position? I think reasonable notice and hearing is, um, it's tied, not, it's, there's no federal standard as the plaintiffs argue. Uh, there are a litany of cases that I can tell you, which all apply state laws. So I think... Well, it seems here like the state law did not, uh, require, um, a hearing, any hearing. That is true. So if CPU hadn't held oral argument, would there still have been a reasonable notice and hearing? Yes, Your Honor. Under, under Wood, the Wood case that we cite too, California law does not require a hearing before imposing a rate. Um, in this case, there were, this attorney, Mr. Aguirre, represented a party in the proceeding. He had nine opportunities to engage the commission and express views. There were no limit spot by the commission on what kinds of evidence could be, um, asserted or, or advocated on. There were, um, several different hearings. There was a pre-hearing conference. There was oral arguments. There was a commission meeting all on this. And there was, under any Johnson Act case that you can find, there's more than ample, um, opportunity to interact with the commission and make your voice heard in this case. Can I ask a threshold question on this direct versus indirect, uh, connection? Because here you had a surcharge that was specifically imposed to set up a wildlife fund. Let's say that, that, that, that wasn't part of this. There was no actual surcharge set up, but there was a state law that said, um, the public utility commission has to set aside $10 million for this wildlife fund. And it doesn't make a provision for a surcharge. And the public utilities commission gets this law and then says, well, wait a second, the only way we can comply with this and put aside that money is if we raise the rates. And so, you know, they go back and say, hey, as a result of the law, they have to go back and request a reasonable increase in rates, would that still be enough to satisfy, uh, you know, to trigger the Johnson Act because there would be an indirect relationship to rates, even though that wasn't mentioned at all in the statute? I do think so, your honor. And, you know, um, the appellants have advocated that, uh, form shopping was an issue, um, that sort of animated the Johnson Act and as the Tennyson case said, doubtless that was one purpose, but we find substantial support in the act, not, it should not be so restricted rather by its broad wording. It is clear that it was intended to keep constitutional challenges to orders affecting rates out of federal courts, lock, stock and barrel. But I just, let me follow up. And I know I'm eating into other time, but, um, that, that would, the problem is that would almost apply to any law that affects public utility behavior. What if they passed a law that just said, uh, you know, we are going to impose additional safety requirements on public utilities has nothing to do with rates, but the only way that they can comply with these, with, you know, the, the, the safety requirements that the statute imposes and they come back and make the argument a year later, two years later. And they say, we have to increase our rates because the state law imposed additional requirements. Your position would be the plaintiffs could not challenge that safety requirement statute in federal court. That's correct, your honor. I think that's the intent of the Johnson Act. I think it wants to funnel all rate making litigation into state court. And there, and there's ample evidence or ample opportunity as could have happened in this case for the state courts to address it, the, uh, it's first dealt with at the commission level. They can raise constitutional challenges, which are then addressed by the California court of appeal. They're then addressed by the California Supreme court, and they're then addressed by the United States Supreme court, which hears these cases. And I think there was an intentional act by Congress to remove all of these types of cases into state court. So I do think that's correct, your honor. And importantly, I would say in this case, particularly where you're talking about a California with its wildfire problems, and this is a police power, you know, of the most important kind, and this is the legislature fashioning a response to that. And this is an area where federal intervention should be treaded very lightly, I would say. And so I'm not so, I'm honestly not so concerned about this case, but I'm quite concerned about the implications of the argument that's being made here. But we'll, we'll have to sort through that. Thank you. Thank you, your honors. Ms. Buten. Uh, thank you, your honors. Um, my name is Gabrielle Buten and I represent, uh, the state officials who are not affiliated with the CPUC. Um, so I'd like to start out by addressing some of the points that have already been made. Um, I think what's important here is, uh, to make the point that there is no per se rule saying that a, uh, a challenge to a statute cannot also be an indirect challenge to a rate order. And, um, I do think there is kind of throwaway language in the public commission, uh, public utilities commission case. Um, but even within that language, I think there is, uh, there is important context, but the quote from the case actually says in the present case, the challenge is not to a rate quote order, but to a statute, which requires the United States to submit its negotiated rates to the California commission for approval. So I think the importance there is that the statute did not have to do with a rate order issued by the CPUC itself. It was a separate process, not having to do with CPUC rate making. No, it would have to do with federal, uh, federal government conducting its own negotiations and then simply getting approval from the CPUC. So I think it is really limited to that statute in that case. Um, the next, uh, the next point, uh, I would like to make is that, um, with respect to what the outer limit is on, um, statutes that have an indirect effect on rate orders, um, I understand your honor's hesitance on that. Um, but I think what's important in this case is that this particular statute contemplates one particular rate order and it gives the CPUC discretion, um, depending on, on if the CPU is able to find that the, that the prescribed type of rate would be just and reasonable, um, then it shall, then it should issue that rate order, obviously. So I think this is a very, um, you know, to the extent it's an indirect chance to rate order, it's barely indirect. And this is kind of one of the closest connections I think you could imagine between a statute and a rate order. So I think, um, I think that kind of requisite link is, would you give the same, would you give the same answer that Mr. Nolan gave that, uh, in, in my hypothetical where there's just a statute that imposes, you know, safety requirements are going to cost $10 million to, to implement. Um, and the only way obviously to comply with that is for the public utility to come in and request indirectly a rate increase the following year to be able to get the funds to do that. Would you agree that that's enough to trigger the Johnson Act? Well, I think that, you know, a really important part of the test is whether or not the injunction would invalidate the rate order that is been issued because the text of the Johnson Act says it shall not restrain the operation of a rate order. So I think you would have to look at, would that statute, which simply requires money to be spent, necessarily void the operation of a rate order that, um, that went into effect in order to effectuate it? Maybe not. So I think that's an important difference here. Um, and again, and, and that test comes directly from US West, which finds that this, um, this essentially collateral stopple effect, um, is an independent grounds for finding that the Johnson Act applies. So, um, that would be my answer to that question. Um, one point I'd like to clarify as well is, um, I think the word hearing has been used a little bit loosely, um, you know, by all parties involved in the briefing and in the hearing. I think it is important, um, to make the point that there was a pre-conference hearing, there was oral argument and what plaintiffs are asking for essentially a more trial-like proceeding. So there actually were two oral hearings held. And also when we talk about an opportunity to be heard, obviously there were all those, um, at least five in the Ms. Hendricks case, seven opportunities for written submissions. So she was also heard through those submissions, um, which were addressed, um, in the orders that issued. Um, and I think, um, another, another key point of analysis here is again, I think the fact that the, um, actually let me, let me back up a little bit, um, and change gears. Um, I think I'd also like to address kind of what's going on with the due process claim here. Um, I think what's happened is that through the pleadings in this case and the briefing and the appeal and oral argument today, there have been kind of various descriptions, um, by the plaintiffs of the nature of their due process challenge, but there are really only three possibilities in terms of what it could be. Um, one, um, which is what sounds like is being argued today is that the manner in which, um, AB 1054 is formulated and enacted by the legislature violates due process. But that can't be a due process violation because legislative acts do not give rise to due process rights. There is not a due process right to be heard before legislation goes into effect. So certainly as a matter of law, that's just not a cognizable claim. Um, and some of these arguments go to the fact that, you know, we do think But I thought there was, I thought, maybe I misunderstood. I thought there was some sort of, uh, agency action here. It was all statute. It was all statutory. So what, so, so, um, and I think it would maybe be helpful for me to to describe the three ways there could be due process violations. So one is if it, if it's with the enactment of the statute, two is an as-applied challenge to the agency, um, order of the surcharge, which has occurred, but the plaintiffs claim in their briefing that they're not challenging the actual rate order. And it's therefore not an as-applied challenge to the statute. So the only remaining possibility would be a facial challenge to the statute. And with, and with a facial challenge, you have to show that in no set of circumstances could the CPUC have, um, constitutionally, uh, essentially, uh, complied with the statute. And the fact is this statute does not require any rate order to be issued. CPUC only was to issue the rate order if it found that the rates were just unreasonable. So this legislature was essentially Hold on. Let's back up because I mean, you're right as a legal point, but the fact that they required money to be set aside into a fund, I mean, there was really no way for them to go forward and not set a surcharge or a rate, uh, rate order. Right. I mean, um, I don't think that's necessarily true because there's no law saying there were, there are various mechanisms in terms of funding, but those, but the funding was, and this was one of them, but if the rate was not passed, then that, that amount of money simply wouldn't have been used for the fund. The surcharge actually goes to paying back some of the administrative costs and then also to repay, um, the water bonds. But the provisions of AB 1054 are severable. So even if the legislature imagined the funding to happen in a certain way, it certainly did not intend that if one of the provisions was struck down in terms of how the funding would happen, that then the whole thing falls apart or require a rate to be set, um, in direct contravention of the plain language of section 3289, which very clearly says only if they find that it's just unreasonable. And again, if there's a sense of, oh, well, you know, the fix was in, of course, they're going to find it just reasonable. Again, that's where the claim should have, they should have participated in the, um, in the administrative proceeding. And then, uh, if necessary, taken it to the California court of appeal to, uh, bring that due process claim. I think I've addressed, um, some of the questions that came up. Can I, I have one more question. To the extent that, I mean, not everything in the plaintiff's complaint seems to address or affect rates. I, uh, if we were to go back and, uh, well, if we affirm the district court, do we have to agree that everything is, I mean, the whole complaint was dismissed, right? So, uh, is there a way to split that? Or should we look at splitting that to say, Hey, look, all claims that affect rates are precluded, but other claims need to be looked at independently to And maybe there's not, maybe, but. I think there are two parts to that question. One is that the only injury that they allege is from the rates. So, they are alleging that these other provisions are causing them rates, excuse me, causing them injury by being their connection to the rates. So, that's what the allegations in there say. So, to the extent, um, that's, you know, that's plaintiff allegations, then yes, it was appropriate. But I also think it's important to look at, um, the lack of connection to the rates and why, um, the plaintiffs in any event don't have standing to bring challenges to those provisions, uh, most notably because they can't meet this fairly traceable test. That's part of, um. So, the district court didn't address any of that, right? They didn't, but it is, it is a threshold inquiry that should have been addressed and that that shouldn't prolong proceedings longer, you know, longer than necessary. Uh, thank you very much, Mr. Patan. Um, Mr. Aguirre, I'll give you three minutes. Thank you so much. I really need the three minutes because number one, I would ask the court to recognize that we are saying that this was the product of corruption and that we'd be given a chance because the decision was not made at CPC. Mr. Aguirre, that is, without due respect, that almost has nothing to do with the inquiry that's before the court. Well, and you're picking this up on a complete tangent. It may be corruption, but you're not the first person to allege that. The question is, do you have to go to state court or federal court? Okay. But may I just say, and I respect what you're, please just, just give me the benefit of the doubt for a moment. Your Honor, what I'm saying is the decisions were made not at the CPC. They were made in the meetings that PG&E attended with the other state officials. Once they had that put together. You may be entirely correct. How does that affect jurisdiction under the Johnson? Because it's, then it, then it's, you're not talking about a rate made at the CPC. You're talking about a corrupt deal behind closed doors. And if you give me the opportunity that remember we're at the pleading stage, you know, you know, I, I, I'm a former assistant United States attorney. I've been practicing law for 50 years. Okay. And I, and I'm telling you that if you give us the chance to develop the facts, we will prove that this was done, not at the CPC, but behind closed doors. If you look at, uh, We can only give you the authority we have, Mr. Guire. And you haven't, in my opinion, you haven't shown us why this belongs in federal court. And, and that's your, I mean, that's your burden. That's one, one of the basis in the, in the, for the Johnson Act. One of the basis is, is that we have a plain speedy remedy in state court. We don't. You've already heard them say that in state court, they don't even require a hearing. One of the things I would ask you to consider then as an alternative, the hearing that is required under the Johnson Act is, equates to how much factual assumptions are being made with the policy. So for example, they say that this is only going to go to safe actors. Okay. There was no proof of that. They say that, uh, that the, that the, uh, the money is going to be invested in safety. There's no proof of that. So if they're saying that we're doing this and they impose it on the CPC, at least the CPC should have a hearing to determine if what those factual assumptions are, if they're correct. And one last thing, Your Honor. The way we test what a case is about is what is in the prayer. In our prayer, we ask for two things. For a judgment that the following provisions of section six and 16 of AB 1054 be declared to have been adopted in violation of the United States constitution and for injunctive relief and any other relevance to statute adjoining defendants from enforcing or implementing section six and 16. Okay. So, so it is just the statute. We're not talking about the order. Counsel, I would agree with you that this whole thing comes down to what's in your complaint and specifically what relief you're asking for. And the relief you're asking for, aside from these big concepts that you're talking about, about fraud and the constitution, the relief that you're asking for is to not have to pay the rate. So how do we, I mean, this is what we're struggling with. It all boils down to the harm that your clients are pointing to is they don't want to pay this rate. They can't be here to just say, we don't like this law. We think it was corruptly enacted. They have to have a harm. They have to show a harm. And the harm that you're pointing to is we don't want to pay this rate. And if that's the case, then how do you get out of the job tonight? Your Honor, it's not, it's not so much that we don't want to pay the rate. Is that what happened here is where did that $10.5 billion come from? It has no, no, no, it's not traceable to anything. It just was brought out of thin air. And we're told now you're going to pay $10.5 billion. Where does the idea that you can't change it for 17 years? You cannot change the decision for 17 years. Where does that come from? That's not, it's a matter of due process. Exactly what Justice O'Connor warned about in the Kelo case. Disproportionate power by those who are politically and financially well-connected, make people with less money, give money to people with more money. And that's all that's happening here. This is a company that has been convicted of 85 felony manslaughter. Those 80, the campfire, they now get to automatically get money from the state to pay those damages. That is not justice. That is not what, I can tell you, that's not what Hiram Johnson had in mind when he put together the Johnson Act. Now I agree with you, you know, we're hung up on the Johnson Act and you're correct in your analysis that it does impede. But if we have a pathway under these unique circumstances, at least give us a chance to amend our complaint and at least give us a chance to develop the facts and come back with fairness. So that the citizens... Did you request an amended complaint? That's actually an interesting point. I thought through it. Did you request an amended complaint below? Yes, Your Honor. May I just cite? Yes, Your Honor, I can. And yes, we did. We requested leave to amend. Let me just give you that. And it was denied? And it was denied, yes. Okay, that's fine. I'll take a look at it. Thank you. Okay, again, thank you. Thank you. Thank you for hearing us out. We really appreciate your attention and courtesy today. Thank you all very much, Mr. Gary, Mr. Nolan and Ms. Plutan. I appreciate the oral argument presentations. The case of Alex Panera versus Carla Nameth is now submitted. Thank you.
judges: Murguia, Nelson, Hunsaker